UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CARL BARBER, Jr., and REX HARROLD<br>    Plaintiffs,<br><br>            v.<br><br>TOWN OF GASTON, TANYA HIATT, in her individual and official capacity, JAY BEESON in his individual and official capacity, RICHARD DURANT, in his individual capacity, and HEATHER MCGONIGLE, in her individual capacity,<br>    Defendants. | )<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND REQUEST FOR JURY TRIAL

Come now Plaintiff, Carl Barber, Jr. (hereinafter "Plaintiff Barber"), and Plaintiff, Rex Harrold (hereinafter "Harrold"), by counsel, Brian M. Pierce, and file their complaint for declaratory relief and damages against Defendant, the Town of Gaston (hereinafter "Defendant Gaston" or "Town of Gaston"), Defendant, Tanya Hiatt (hereinafter "Defendant Hiatt"), in her individual and official capacity, Defendant, Jay Beeson (hereinafter "Defendant Beeson"), in his individual and official capacity (hereinafter collectively referred to as "the Gaston Defendants"), Defendant, Richard Durant (hereinafter "Defendant Durant"), in his individual capacity only, and Defendant, Heather McGonigle (hereinafter "Defendant McGonigle"), in her individual capacity only. In support, Plaintiff Barber and Plaintiff Harrold allege the following:

        A.      **Venue and Subject Matter Jurisdiction**

    1.    Plaintiff Barber is a resident of Delaware County, State of Indiana, which is within the jurisdiction of the federal court of the Southern District of Indiana.

    2.    Plaintiff Harrold is a resident of Delaware County, State of Indiana, which is within the jurisdiction of the federal court of the Southern District of Indiana.

1

3. Defendant Gaston has its principle place of business, and is located, within Delaware County, State of Indiana, which is within the jurisdiction of the federal court of the Southern District of Indiana.

4. Defendant Hiatt, in her individual and official capacity, is a resident of Delaware County, State of Indiana, which is within the jurisdiction of the federal court of the Southern District of Indiana. She is a duly elected member of the managing board of Defendant Gaston.

5. Defendant Beeson, in his individual and official capacity, is a resident of Delaware County, State of Indiana, which is within the jurisdiction of the federal court of the Southern District of Indiana. He is a duly elected member of the managing board of Defendant Gaston.

6. Defendant Durant, in his individual and official capacity, is a resident of Madison County, State of Indiana, which is within the jurisdiction of the federal court of the Southern District of Indiana.

7. Defendant Heather McGonigle, in her individual capacity, is a resident of Madison County, State of Indiana, which is within the jurisdiction of the federal court of the Southern District of Indiana.

8. This court has subject matter jurisdiction under 28 U.S.C. § 1331 because the Complaint alleges claims arising under federal law, and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367.

### B. Factual Allegations

9. Defendants Beeson and Hiatt are two (2) duly elected members of the managing board of the Town of Gaston.

10. Katina Gleeson, a non-party in her individual capacity, is the third member of the managing board of the Town of Gaston.

11. Defendant Hiatt serves as the President of the Gaston Town Board.

12. Defendant Durant is a reserve Deputy Marshal for the Gaston Defendants, who is not current on his mandatory law enforcement training hours.

13. Plaintiff Rex Harrold is a former reserve Deputy Marshal for the Gaston Defendants.

14. Currently, there are (4) full-time paid employees of the Town of Gaston. (3) of the employees are male, and (1) is female.

15. The female employee is Tammy Dobbs, a non-party.

16. Plaintiff Barber, as one of the (3) male employees, has been employed by the Town of Gaston as a law enforcement officer since 1998.[1]

17. At all times relevant, Plaintiff Barber was the duly appointed Chief Marshal for the Town of Gaston.

18. At all times relevant, Plaintiff Barber was also a K-9 police officer for the Town of Gaston.

19. At all times relevant, Plaintiff Barber's hourly rate of pay was ($12.00).

20. Plaintiff Barber's employment as Chief Marshal of the Town of Gaston is a constitutionally protected interest requiring the opportunity for a fair hearing conducted in good faith before a full and impartial body prior to termination of his employment pursuant to I.C. § 36-8-3-4 (the Indiana Merit Law).

21. In August 2017, Plaintiff Barber and Plaintiff Harrold became aware that Defendants Durant and Hiatt were openly speaking at the Gaston fair about fabricating allegations against Plaintiff

---

[1] The other (2) full-time male employees are Ray Gillespie and Brian Hussung.

Barber in order to terminate his employment then replace him.

22. Moreover, Defendant Durant told a fellow reserve Deputy Marshal during the Gaston fair that he was: romantically involved with both Defendants Hiatt and McGonigle, and that he was going to burn down Plaintiff Harrold's house and family.

23. Defendant Hiatt was also telling numerous members of the community that she was going to fire Plaintiff Barber.

24. On September 15, 2017, Defendant Beeson told a member of the community that he and Defendant Hiatt were going to fire Chief Barber in about two weeks, and they already found someone to replace Plaintiff Barber.

25. Also, during September of 2017, Plaintiff Barber and Plaintiff Harrold became aware that Defendant Hiatt had solicited, and obtained written "complaints" from (5) individuals. Those (5) individuals are Defendants McGonigle and Durant, Mike Dobbs, Ms. Dobbs, and the Dobbs' adult daughter.

26. Prior to these (5) complaints, Plaintiff Barber had no written complaints, reprimands, or disciplinary reports.

27. As for Defendant McGonigle's complaint, Defendant Hiatt instructed Defendant Durant to conduct an "investigation," including obtaining a written statement and conducting graphic interview from Defendant McGonigle, which was recorded on a cell phone in a small room with young children present.

28. At the time Defendant Durant conducted Defendant McGonigle's "interview", Defendant Durant was also a complaining party, was not current on his statutory training hours to serve as a reserve Deputy Marshal, was not qualified or trained in forensic interviewing, and had allegedly suffered a stroke.

29. Defendant Beeson served as a witness to Defendant McGonigle's written statement, along with Defendant Durant.

30. Upon knowledge and belief, Defendant Hiatt was present at the time the written statement was made.

31. As for the written complaints of the Dobbs family, to date the Gaston Defendants have refused to provide those documents even though the contents are known. Upon knowledge and belief, Defendants Beeson and Hiatt were present as witnesses.

32. On October 12, 2018, the Gaston Defendants held a meeting of the managing board. During the meeting, Defendant Hiatt moved to place Plaintiff Barber on unpaid administrative leave for (5) days.

33. Defendant Beeson seconded the motion to place Plaintiff Barber on unpaid administrative leave for (5) days.

34. Defendants Beeson and Hiatt then voted in favor of placing Plaintiff Barber on unpaid administrative leave for (5) days. Ms. Gleeson voted against the motion.

35. Then on October 17, 2018, Defendants held a meeting of the managing board. During the meeting, Defendant Hiatt moved to terminate the employment of Plaintiff Barber.

36. Defendant Beeson seconded the motion to terminate the employment of Plaintiff Barber.

37. Defendants Beeson and Hiatt then voted in favor of terminating the employment of Plaintiff Barber. Ms. Gleeson voted against termination the employment of Plaintiff Barber.

38. At no time during the October 17, 2018 meeting did Defendants move to place Plaintiff Barber on paid administrative leave pending the outcome of a merit hearing pursuant to I.C. § 36-8-3-4, also commonly referred to as the Indiana Merit Law.

39. At no time during the October 17, 2018 meeting did Defendants vote to place Plaintiff Barber on paid administrative leave pending the outcome of a merit hearing pursuant to I.C. § 36-8-3-4.

40. Immediately after the meeting, the attorney for the Gaston Defendants presented the undersigned counsel with a letter stating that the Gaston Defendants "determined that effective immediately" Plaintiff Barber was on paid administrative leave.

41. Further, the letter advised Plaintiff Barber of his right to request a merit hearing within (5) days pursuant to I.C. § 36-8-3-4.

42. On October 19, 2018, Plaintiff Barber, by counsel, served the Gaston Defendants with a written request for a merit hearing.

43. The October 19, 2018 letter also put the Gaston Defendants on notice that Defendants Beeson and Hiatt would be called as witnesses at the merit hearing.

44. Pursuant to I.C. § 36-8-3-4, the merit hearing was to be held not more than thirty (30) days after the hearing is requested by the employee, unless a later date is mutually agreed upon by the parties.

45. On or about October 26, 2017, Plaintiff Barber and Plaintiff Harrold were cleared of any, and all, of the alleged criminal acts alleged by Defendants Hiatt, McGonigle, and Durant.

46. On November 2, 2017, the Gaston Defendants issued a letter providing the (4) categories of charges supporting their basis for seeking to terminate Plaintiff Barber. The (4) categories of charges were: neglect of duty; violation of rules; disobedience of orders; and conduct unbecoming of an officer.

47. Those (4) specific categories contained (12) specific alleged violations. Of those (12) allegations, (7) are complaints by Defendant Hiatt that Plaintiff Barber directly and continuously refused to follow her orders. Those (7) are as follows:

    A)    Direct and continuous refusal to enforce Gaston Ordinance 130.05 — Curfew for Minors;

    B)    Direct and continuous violation of the Gaston Police Department Standard Operating Guideline 97-23, 97-26, and 97-27 which prohibits all Gaston Police Officers, including the Town Marshal, from patrolling outside the corporate boundaries of the Town of Gaston unless specifically permitted to do so or if such patrol is warranted by any one of the enumerated exigent circumstances;

    C)    Direct and continuous violation of the Gaston Police Department Standard Operating Guideline 97-13 which requires all Officers of the Gaston Police Department to complete a daily log sheet for each shift worked;

    D)    June 6, 2017 — Failure to provide Town Council with requested reports;

    E)    August 8, 2017 — Failure to provide Town Council with mileage logs;

    F)    September 7, 2017 — Failure to provide Town Council with dispatch log;

    G)    June 6, July 3, September 6, and October 4, 2017 — Failure to provide Town Council with monthly calendars.

48. In other words, of the (12) specific violations alleged, Defendant Hiatt was the complaining party and witness in support of (7) of the alleged violations. As for the remaining (5) alleged violations, Defendant Hiatt acted as a witness and/or investigator.

49. The merit hearing was set on a date mutually agreed upon by the parties – November 16, 2017.

50. The merit hearing was then continued until a date mutually agreed upon by the parties – December 6, 2017.

51. On December 5, 2017, Defendants filed a miscellaneous civil case seeking to quash the subpoenas issued to Defendants Beeson and Hiatt.[2]

52. The Gaston Defendants unilaterally, not by mutual agreement of the parties or court

---

[2] Cause Number 18C05-1712-MI-000402

order, cancelled the merit hearing.

53. The Gaston Defendants motion to quash the subpoenas issued to Defendants Beeson and Hiatt, and motion for an order not to produce copies of documents, are currently set for hearings on May 9, 2018 and May 14, 2018.

54. During a meeting of the managing board for the Gaston Defendants on January 11, 2018, Ms. Dobbs, was hired for a part-time position with an advertised payrate of ($9.50) an hour. Moreover, Ms. Dobbs did not meet the basic qualifications of the advertised position.

55. Defendant Hiatt immediately moved to raise Ms. Dobbs' payrate to ($12.00) an hour, which is an increase of ($2.50). Defendant Beeson seconded the motion. Defendants Beeson and Hiatt voted in favor of the motion with Ms. Gleeson voting against the motion.

56. During the same meeting, one of the (3) male employees, with significantly more experience and years of service, received a pay increase of ($.08) an hour. Again, Defendants Beeson and Hiatt voted in favor of the motion with Ms. Gleeson voting against the motion.

57. Ms. Gleeson moved to give all (3) male employees a raise, but Defendants Beeson and Hiatt voted against the motion.

58. On April 25, 2018, Defendants held a meeting of the board. During the meeting, Defendant Hiatt moved to place Plaintiff Barber on indefinite unpaid administrative leave.

59. During the discussion of Defendant Hiatt's motion, Defendant Hiatt stated that she was doing it to "stop the bleeding", that she had not consulted the Gaston Defendants' attorney, and that she could cite no law that would permit converting Plaintiff Barber's statutory paid administrative leave to unpaid administrative leave.

60. Defendant Beeson seconded the motion to place Plaintiff Barber on unpaid administrative leave.

61. Defendants Beeson and Hiatt then voted in favor of placing Plaintiff Barber on unpaid administrative leave. Ms. Gleeson voted against the motion.

62. During the same meeting in which Defendants terminated Plaintiff Barber's pay and benefits, Ms. Dobbs pay was increased to ($14.00) an hour and given the title of Street Superintendent.

63. Defendants Beeson and Hiatt again voted in favor of the pay raise with Ms. Gleeson voting against the pay raise. There were no changes in pay for the (3) male employees.

64. Defendant Hiatt even stated during the meeting that one of the male employees would have to assist Ms. Dobbs with her job duties.

65. Thus, within approximately (3) months of making allegations against Plaintiff Barber and Plaintiff Harrold, Ms. Dobbs was hired by Defendants Beeson and Hiatt, she received no less than (2) pay raises and (1) promotion, while the (3) male employees with more experience and years of service received: 1) termination of pay and benefits; 2) no pay raise; and/or 3) a deminimis pay raise.

### Count 1 – (14th Amendment - Procedural Due Process)

66. Plaintiff Barber incorporates and restates paragraphs 1-65 above.

67. Count 1 applies to the Gaston Defendants, Defendant Hiatt in her individual and official capacities, and Defendant Beeson in his individual and official capacity.

68. Under 42 USC Sec. 1983:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia"

69. Law enforcement officers in the State of Indiana have a constitutionally protected property interest in their continued employment. See I.C. §36-8-3-4

70. It is well established law that the Gaston Defendants are required to follow the specific procedures of the Indiana Merit Law.

71. In fact, the applicable statutory section opens by stating: "[t]his section also applies to all towns…that have full-time, paid police…." I.C. § 36-8-3-4

72. I.C. § 36-5-7-3 confirms that the Indiana Merit law must be followed when attempting to suspend or terminate a town marshal or his/her deputies.

73. Before any police officer, including Plaintiff Barber, can be "suspended **in excess of five (5) days without pay**, demoted, or dismissed, the safety board shall offer the member an opportunity for a hearing." (emphasis added)

74. The hearing must be "a fair hearing conducted in good faith before a full and impartial body." *Sullivan v. City of Evansville,* 728 N.E.2d 182 (Ind. Ct. App. 2000, *citing Atkinson v. City of Marion,* 411 N.E.2d 622, 628 (Ind. Ct. App. 1980); *Dell v. City of Tipton,* 618 N.E.2d 1338, 1342 (Ind. Ct. App. 1993)

75. "[T]he procedural standards should be at the highest level workable under the circumstances, and that the fact-finding process should be free of suspicion or even the appearance of impropriety." *Id*. quoting *Atkinson,* 411 N.E.2d at 628.

76. Any decision of an administrative board "predicated upon a hearing devoid of the requisite requirements is illegal and void." *Id. quoting City of Marion v. Antrobus,* 448 N.E.2d 325, 329 (Ind. Ct. App. 1983).

77. The Gaston Defendants voted to terminate Plaintiff Barber's pay and benefits for a period of more than (5) days without holding a merit hearing, which is a violation of Plaintiff Barber's

right to due process of law.

78. The Gaston Defendants failed to conduct the merit hearing within (30) days unless first selecting a mutually agreeable date beyond said period, which is a violation of Plaintiff Barber's right to due process of law.

79. At all times relevant, Defendants Beeson and Hiatt have acted as investigators, witnesses, and voting members of the hearing board, which are violations of Plaintiff Barber's right to a fair hearing conducted in good faith before a full and impartial body, and his right to due process of law.

80. The Gaston Defendants, through their words and their actions, have willfully refused to provide the opportunity for a fair hearing conducted in good faith before a full and impartial body prior to the termination of Plaintiff Barber's employment.

81. Defendants Beeson and Hiatt have acted with deliberate indifference to the clearly established laws setting forth the procedural due process requirements necessary to terminate Plaintiff Barber.

## Count 2– (Violations of the Fair Labor Standards Act)

82. Plaintiff Barber incorporates and restates paragraphs 1-81 above.

83. Count 2 applies to the Gaston Defendants, Defendant Hiatt in her individual and official capacities, and Defendant Beeson in his individual and official capacity.

84. Under the Fair Labor Standards Act ("FLSA"), an employer must pay, or give compensatory time ("comp. time") to, an employee at least one and one-half times his or her regular rate of pay for each hour worked in excess of (40) hours per workweek.

85. Under the FLSA, it is mandated that a K-9 handler be compensated for all "at-home care" of the K-9 partner.

86. Under the FLSA, law enforcement officers can accumulate up to (480) hours of comp.

time per year, and employers are prohibited from maintaining a "use it or lose it" policy.

87. At all times relevant herein, the Gaston Defendants have been "employers" of a law enforcement officer, and K-9 officer, within the meaning of the FLSA.

88. At all times relevant herein, the Gaston Defendants were responsible for paying wages to Plaintiff Barber.

89. At all times relevant, Plaintiff Barber was employed as a law enforcement officer, including as a K-9 handler, who kenneled his K-9 partner at home.

90. Although Plaintiff Barber carried the title of Chief Marshal, he was not paid a salary and he had no authority over the hiring and firing of subordinate officers. Thus, Plaintiff Barber is/was a nonexempt employee for purposes of the FLSA.

91. Beginning in September 2017, the Gaston Defendants passed, and implemented, a new employee manual containing a "use it or lose it" policy. Specifically, it states that "[c]omp. time can be carried over into the following year but must be used by June 30 of that year. Comp. time needing to be carried over after 1 year must have Town Council approval." The new employee manual calculates comp. time as "time and a half off **with pay**." (emphasis added).

92. The new employee manual also requires prior request, and approval, for overtime without providing exceptions for law enforcement and K-9 officers.

93. The prior employee manual did not contain a "use it or lose it" policy and calculated comp. time as "time and one-half."

94. At all times relevant herein, Defendant Hiatt refused to accept any time cards containing overtime hours from Plaintiff Barber. In fact, Defendant Hiatt specifically instructed Plaintiff Barber to redo his time cards and remove overtime hours before submitting them because he was not allowed to have overtime.

95. At all times relevant herein, the Gaston Defendants refused to pay any expenses for the

care, training, and maintenance of Plaintiff Barber's K-9 partner.

96. The Gaston Defendants' violations of the FLSA include, but are not limited to,: 1) unlawfully maintaining a "use it or lose it policy"; 2) failing to provide overtime compensation for at-home care of Plaintiff Barber's K-9 partner; 3) failing to pay for, or reimburse Plaintiff Barber, for the care and maintenance of Plaintiff Barber's K-9 partner; 4) refusing to allow Plaintiff Barber to accumulate and/or submit overtime hours; and 5) refusing to accept time cards from Plaintiff Barber that contained his overtime hours worked.

97. The conduct of the Gaston Defendants, including Defendants Beeson and Hiatt in their individual and official capacities, in failing to compensate Plaintiff Barber properly was, and is, deliberate, willful, and not based upon any reasonable interpretation of the law.

98. Because of the Gaston Defendants' willful and unlawful conduct, Plaintiff Barber has suffered significant damages in the amount of unpaid overtime and expenses for his K-9 partner.

**Count 3 – (Violation of the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act 1963)**

99. Plaintiff Barber incorporates and restates paragraphs 1-98 above.

100. Count 3 applies to the Gaston Defendants, Defendant Hiatt in her individual and official capacities, and Defendant Beeson in his individual and official capacity.

101. The Gaston Defendants have discriminated against Plaintiff Barber in violation of the Equal Pay Act by providing him, and his (2) male colleagues, with lower pay than his less qualified female colleague on the basis of his gender, male, even though Plaintiff Barber performed duties requiring more skill, effort, training, responsibility and experience than his female counterpart.

102. The Gaston Defendants discriminated against Plaintiff Barber by subjecting him to discriminatory pay, discriminatory denials of raises and other compensation incentives, and other forms of discrimination in compensation in violation of the Equal Pay Act.

103. The differential in pay between Plaintiff Barber and Ms. Dobbs was not due to seniority,

merit, quantity or quality of production, or a factor other than sex, but was due to gender.

104.    The Gaston Defendants caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender, in violation of the Equal Pay Act.

105.    The actions of Defendants Beeson and Hiatt constitutes a willful violation of the Equal Pay Act within the meaning of the Equal Pay Act.

106.    By reason of the Gaston Defendants' discrimination, Plaintiff Barber is entitled to all legal and equitable remedies available for violations of the Equal Pay Act, including liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

### Count 4 – (14th Amendment – Violation of the 1st Amendment)

107.    Plaintiff Barber incorporates and restates paragraphs 1-106 above.

108.    Count 4 applies to the Gaston Defendants, Defendant Hiatt in her individual and official capacities, and Defendant Beeson in his individual and official capacity.

109.    Under 42 USC Sec. 1983:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia"

110.    The curfew ordinance for the Town of Gaston, § 130.05, provides in relevant part as follows:

> A)    Curfew imposed. No person under 18 years of age shall remain, loiter, or wander on or about the public streets, sidewalks, alleys, or public parks within the town between the hours of 9:30 p.m. and 4:00 a.m.
>
> B)    Enforcement. Each person under 18 years of age found on the streets, alleys, or

      public places shall be taken into custody and returned to his or her home by a duly appointed law enforcement officer.

111. The only exceptions to the curfew ordinance are:

    A)     When the minor is accompanied by his or her parent, guardian, or other adult person having the care and custody of the minor;

    B)     When the minor is upon an emergency errand directed by his or her parent or guardian or other adult person having the care and custody of the minor;

    C)     When the minor is returning directly home from a meeting, entertainment, recreational activity, or dance; or

    D)     Trick-or-treating shall be limited to the calendar day of the holiday of Halloween, between the hours of 6:00 p.m. and 9:00 p.m.

112. In *Hodgkins v. Goldsmith,* No. IP99-1528-C-T/G, 2000 WL 892964, at *18 (S.D.Ind. July 3, 2000) ("*Hodgkins I*") and *Hodgkins v. Goldsmith,* 355 F.3d 1048 (7th Circuit 2004)("Hodgkins II"), the 7th Circuit Court of Appeals held that a curfew ordinance, such as the Gaston Defendants' curfew ordinance, violates the 1st Amendment to the Untied States Constitution.

113. I.C. §31-37-3-2 sets the curfew for children between the ages of (15-17) as follows: between 1 a.m. and 5 a.m. on Saturday or Sunday; after 11 p.m. on Sunday, Monday, Tuesday, Wednesday, or Thursday; or before 5 a.m. on Monday, Tuesday, Wednesday, Thursday, or Friday.

114. For children less than (15) years of age, the curfew is from 11 p.m. to 5 a.m. on any day. I.C. 31-37-3-3

115. The Indiana curfew statutes prohibit law enforcement officers from simply taking "[e]ach person under 18 years of age found on the streets, alleys, or public places" after curfew into custody and/or returning them to his or her home.

116. Moreover, I.C. § 31-37-3-4 prohibits the Gaston Defendants from implementing or enforcing a curfew ordinance that advances the curfew time by more than two (2) hours.

117. The Gaston Defendants' curfew ordinance is facially unconstitutional and in direct

violation of Indiana law.

118. The Gaston Defendants have willfully and deliberately violated the 1st Amendment to the United States Constitution and Indiana law by implementing and enforcing the curfew ordinance.

119. Defendants Beeson and Hiatt have willfully and deliberately:

   A) Demanded that Plaintiff Barber enforce the unconstitutional curfew ordinance and violate the 1st Amendment Rights of juveniles within the Town of Gaston;

   B) Threatened Plaintiff Barber with disciplinary action, including termination, for failing to enforce the unconstitutional curfew ordinance and for failing to violate the 1st Amendment Rights of juveniles within the Town of Gaston; and

   C) Suspended Plaintiff Barber with, and without pay, for failing to enforce the unconstitutional curfew ordinance and for failing to violate the 1st Amendment Rights of juveniles within the Town of Gaston.

120. Therefore, this Court should declare Town of Gaston Ordinance §130.05 unconstitutional, issue a permanent injunction prohibiting its enforcement, and order that the Gaston Defendants pay reasonable attorney fees.

## Count 5 – (State Law Defamation)

121. Plaintiff Barber and Plaintiff Harrold incorporate and restate paragraphs 1-120 above.

122. Count 5 applies to Defendants Hiatt, Beeson, McGonigle and Durant, in their individual capacities only.

123. A defamatory communication is one that "tend[s] to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Kelley v. Tanos*, 865 N.E.2d 593, 596 (Ind. 2007)

124. Defendants Hiatt, McGonigle and Durant, in their individual capacities only, conspired and caused an Indiana State Police investigation to be instituted against Plaintiff Barber and Plaintiff Harrold based on false statements.

125. Defendants Hiatt, Beeson, McGonigle and Durant, in their individual capacities only, have made numerous false statements about Plaintiff Barber and Plaintiff Harrold to members of the

Gaston community, as well as others, related to sexual misconduct, criminal conduct, and professional misconduct.

126. Under Indiana law, the statements made by Defendants Hiatt, Beeson, McGonigle and Durant, in their individual capacities only, are defamatory per se.

127. Defendants Hiatt, Beeson, McGonigle and Durant, in their individual capacities only, were primarily motivated by ill will in making the statements and made the statements without belief or grounds for belief in the truth.

128. Defendants Hiatt, McGonigle and Durant, in their individual capacities only, acted with malice shown by each of the following acts, but not limited to: 1) Defendants Hiatt and Durant's statements to others that they would fabricate allegations against Plaintiff Baber and Plaintiff Harrold in order to terminate their employment; 2) Defendants Hiatt and Durant enlisting Defendant McGonigle to make false allegations against Plaintiff Barber and Plaintiff Harrold with full knowledge that Defendant McGonigle had made false child molesting allegations against her ex-husband in 2016; and 3) Defendant Hiatt's use of Defendant Durant, an untrained and unqualified reserve officer, to conduct the investigation and interview of Defendant McGonigle.

129. Defendants Hiatt, McGonigle and Durant, in their individual capacities only, engaged in defamation per se, should be found liable, and ordered to pay compensatory and punitive damages.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff, Carl Barber, Jr. and Plaintiff, Rex Harrold, respectfully request the Court:

A. Award compensatory damages to Plaintiff Barber for defamation per se, and for violations of Plaintiff Barber's rights under the Due Process Clause of the 14th Amendment to the United States Constitution and 42 U.S.C. §1983, the Fair Labor Standards Act, and the Equal Pay Act;

B. Award compensatory damages to Plaintiff Harrold for defamation per se;

C.  Award punitive damages against the all Defendants for their intentional, willful, and wanton wrongdoing against Plaintiffs;

D.  Award attorney fees and costs;

E.  Declare Town of Gaston Ordinance §130.05 unconstitutional and issue a permanent injunction prohibiting the enforcement of said ordinance; and

F.  Grant all other relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues allowable as alleged in this Complaint pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully Submitted,

Date:  05-03-2018

/s/ Brian M. Pierce
Brian M. Pierce, 24350-18
106 E. Washington Street
Muncie, Indiana  47305
Tel:    (765) 289-9122
Fax:    (765) 289-6064
Email: brianpiercelaw@aol.com
Attorney for Plaintiffs